ROLAND L. BELSOME, Judge.
| PROCEDURAL HISTORY
The defendant was charged by bill of information with possession of heroin with intent to distribute. He pled not guilty at arraignment. After a hearing, the trial court denied his motions to suppress the evidence and found probable cause.[1]
*525 At his first trial, the jury was unable to reach a verdict. A second jury trial was held, and the defendant was found guilty as charged. After the denial of post-verdict motions, the defendant was sentenced to twenty-five years at hard labor. He then admitted to the allegations contained in the multiple bill of information filed by the State, and was adjudicated a second felony offender. The trial court vacated the original sentence and sentenced defendant to twenty-five years at hard labor. This timely appeal follows.
STATEMENT OF FACT
While driving on the night of October 17, 2010, the defendant was pulled over at the intersection of North Broad and Iber-ville Streets, in New Orleans, | pursuant to a seat belt violation. The defendant was arrested after heroin was seized from his person.
ERRORS PATENT
A review of the record for errors patent reveals none.
DISCUSSION
In this appeal, the defendant asserts two counseled assignments of error, and three pro se assignments of error, one of which incorporates an assignment of error addressed by counsel. In his first counseled assignment of error, the defendant contends that the evidence was insufficient to support his conviction for possession with the intent to distribute heroin.
When reviewing the sufficiency of the evidence to support a conviction, this court is controlled by the standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which dictates that to affirm a conviction “the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982) (citation omitted). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of ^whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198, 1201 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817, 820 (La.1987).
In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Robinson, 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79 (citation omitted). Under the Jackson standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court. State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291, 1293 (citation omitted). “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the *526 weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992) (citation omitted).
A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. State v. Winston, 11-1342, pp. 8 (La.App. 4 Cir. 9/12/12), 100 So.3d 332, 337 (citations omitted).
In particular, the defendant contends that the State failed to prove that he had the requisite intent to distribute heroin. In order to establish all the elements of the offense, the State must prove that the defendant possessed the drug with the “intent to distribute” it. State v. Williams, 594 So.2d 476, 478 (La.App. 4 Cir.1992). Specific intent to distribute may be established by proving circumstances |4surrounding the defendant’s possession which give rise to a reasonable inference of intent to distribute. State v. Dickerson, 538 So.2d 1063, 1071 (La.App. 4 Cir.1989) (citations omitted). In State v. Hearold, 603 So.2d 731, 735 (La.1992), the Louisiana Supreme Court explained that “[i]ntent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred.” The Court identified five factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance as follows:
(1) [W]hether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant’s possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.

Id.

In the instant case, Officers David Aran-da and Daniel Hiatt of the New Orleans Police Department First District Task Force conducted the stop. The testimony at trial revealed that the officers recovered eleven individually wrapped foil packets of heroin, located within a plastic bag concealed in the defendant’s shorts. The heroin was found tightly packed in a ball of rice. In particular, the officers testified that narcotics dealers frequently package heroin in rice to keep it dry and fresh. Additionally, over $1,000 cash, in various small denominations, was recovered from the defendant’s person and vehicle.
|sThough the defendant provided evidence suggesting a legitimate source of the money that was discovered[2] a reasonable fact finder could have concluded that the presence of so many bills in small denominations was inconsistent with Ms. Williams’ testimony regarding the source of the money, and was more likely the result of actual drug trafficking. Furthermore, a reasonable fact finder could have concluded that it was unlikely that the money that was discovered belonged to Ms. Williams because the majority of the currency was discovered on defendant’s *527 person and not in the vehicle where Ms. Williams reported leaving it.
As the State points out, State v. Davis, 06-1330, p. 9 (La.App. 4 Cir. 4/25/07), 958 So.2d 713, 718-19 is analogous to the instant case. The Davis Court found that a large sum of money and packaged crack cocaine rocks, coupled with a high incidence of narcotics trafficking in the area, was sufficient evidence to support a finding that the defendant was in possession of the narcotics with an intent to distribute. Id., 06-1330, p. 12, 958 So.2d 713, 721. In particular, this Court noted “[cjommon sense would tell a juror that the presence of the unusually large amount of cash in defendant’s car and on his person, along with a loose rock of crack cocaine and eighteen individually wrapped plastic bags, each containing a rock of crack cocaine, were indicative] of an intent to distribute.” Davis, 06-1330, p. 9, 958 So.2d at 718-19. Likewise, in this case, though there was no trial testimony regarding high incidences of narcotics distribution in the area, the presence of a large amount of money in the defendant’s car and on his person, coupled with the numerous individually wrapped foils of heroin packaged in rice were indicative of an intent to distribute.
| fiGiven these circumstances, a rational trier of fact could have concluded beyond a reasonable doubt that the defendant possessed heroin with the intent to distribute it. Accordingly, we find the evidence sufficient to support the defendant’s conviction.
The defendant’s remaining assignments of error challenge the trial court’s denial of the defendant’s motion to suppress the evidence. In support of his argument that his motion was erroneously denied, he makes three claims: 1) the initial traffic stop was unjustified; 2) the plain feel exception did not apply;[3] and 3) a traffic safety violation did not warrant the search.
The State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D). A trial court is vested with great discretion when ruling on a motion to suppress and, consequently, the ruling of a trial judge on such a motion will not be disturbed absent an abuse of that discretion. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The trial court’s findings of fact on a motion to suppress are reviewed under a clearly erroneous standard and the trial court’s ultimate determination of Fourth Amendment reasonableness is reviewed de novo. State v. Pham, 01-2199, p. 4 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 218. Accordingly, “on mixed questions of law and fact, an appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts de novo. ” Id. Where the facts are not in dispute, a reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts. State v. Anderson, 06-1031, p. 2 (La.App. 4 Cir. 1/17/07), 949 So.2d 544, 546.
First, the defendant contends that the initial traffic stop was unjustified because Officer Aranda could not have had a “clear and unobstructed view” of the seat-belt infraction because the windows on the vehicle were tinted.
La. R.S. 32:295.1(F) provides in pertinent part:
Probable cause for violation of this Section shall be based solely upon a law enforcement officer’s clear and unob *528 structed view of a person not restrained as required by this Section.
The evidence introduced at the suppression hearing and trial was similar. In support of his argument that the windows were tinted, the defendant introduced photographs of his vehicle[4] taken by Patrell Williams sometime after the incident. In addition, Ms. Williams testified that the defendant purchased the 2002 Towncar, with tinted windows approximately one week before the incident.
Officer Aranda testified he observed that the defendant was not wearing a seat-belt. He consistently stated that the windows were not tinted at the time of the incident. Moreover, at the suppression hearing, Officer Aranda stated that “if’ the windows were tinted at the time of the incident, the tint was very “light.” He further indicated at trial that had the windows been [illegally] tinted, he would have cited the defendant for it.[5]
In State v. Lee, 02-704, p. 9 (La.App. 5 Cir. 12/30/02), 836 So.2d 589, 595, the fifth circuit found the officer’s traffic stop for a seatbelt violation lawful. | sNotwithstanding evidence of tinted windows being introduced at trial and the argument that the officer could not see into the vehicle due to the tint, the court upheld the trial court’s credibility determination in favor of the officer, who testified that he could see clearly into the vehicle. The officer further stated that had he not been able to see through tinted windows, he would have cited the defendant for illegal tint. Likewise, the trial court in the instant case found Officer Aranda’s testimony credible. Accordingly, we cannot find that the trial court was clearly erroneous in determining that the officer’s view was clear despite any tint on the window.
Next, the defendant submits that the testimony failed to support the application of the “plain feel” exception to the warrantless search of his person; therefore, the trial court erroneously refused to suppress the evidence.
Article 1, Section 5 of the Louisiana Constitution of 1974 and the Fourth Amendment to the United States Constitution protect individuals from unreasonable searches and seizures. A search conducted without a warrant is per se unreasonable under the Fourth Amendment to the United States Constitution, subject only to a “few specifically established and well-delineated exceptions.” Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One such exception was recognized in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which allows an officer to perform an investigative stop where there is reasonable suspicion to be believe that the individual has committed or is about to commit a crime. Id. at 24, 88 S.Ct. at 1881. Under Terry, a police officer may conduct a protective frisk after stopping someone where it is reasonable to believe that the subject may be armed. Id. at 24, 88 S.Ct. at 1881. See also La.C.Cr.P. art. 215.1.
*529 |aWhen an officer is conducting a Terry frisk, the “plain feel” exception allows the seizure of contraband where the incriminating character of the object is immediately apparent to the officer without any additional form of search or examination to identify it as contraband. Minnesota v. Dickerson, 508 U.S. 366, 375-76, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993); State v. Boyer, 07-476, p. 22 (La.10/16/07), 967 So.2d 458, 472. In order for evidence to be seized under the plain feel exception to the warrant requirement, the officer must have probable cause to believe that the item is contraband before seizing it. Boyer, 07-476, p. 24, 967 So.2d at 473 (citing Dickerson, 508 U.S. at 376-77, 113 S.Ct. at 2137-38). The Fourth Amendment’s requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures. Id.
The undisputed testimony from the hearing reflects that when Officer Aranda approached the vehicle, in an area known for drug trafficking, the defendant was extremely nervous: sweating, shaking, and making unusual movements in his crotch areas. Concerned for his safety, he ordered the defendant out of the vehicle and conducted a protective search for weapons. While patting the defendant down, he encountered a spherical object protruding from the defendant’s inner left thigh area, between his shorts and boxers, in an area common for carrying drugs. Immediately recognizing the object as contraband, he removed it using a small knife. Once the object was removed, Officer Aranda observed a tightly bound plastic bag containing foils interspersed between rice.
The defendant argues that the incriminating character of the object, which Officer Aranda encountered underneath his shorts, was not immediately apparent without an additional form of search or examination to identify it as contraband. | inHe likens the case to State v. James, 99-3304 (La.12/08/00), 795 So.2d 1146, where the Louisiana Supreme Court suppressed the seizure of a film canister from defendant’s pocket during a valid investigatory stop, because the officer “could not particularize the association of film canisters •with narcotics trafficking to the circumstances as he knew them at the time he reached into relator’s pocket.” As such, it concluded that the officer “exceeded the scope of a valid Terry stop when he removed the canister from relator’s pocket and began manipulating it to determine its contents.” Id., 99-3304, p. 7, 795 So.2d at 1150. The court noted that a film canister is an object with a myriad of legitimate uses. Id., 99-3304, p. 1, 795 So.2d at 1147. See also, State v. Parker, 622 So.2d 791 (La.App. 4 Cir.1993), writ denied, 627 So.2d 660 (La.1993) (where this Court held that the “plain feel” exception did not apply to the seizure of a matchbox containing cocaine found in the defendant’s pocket during a protective search, because there was no evidence that a matchbox’s shape was identifiable as contraband).
Unlike, James and Parker, the heroin was not located in the defendant’s pocket in a common container, which serves many legitimate purposes. Rather, it was located in a plastic bag, in the upper thigh area, underneath the defendant’s shorts, where drugs are commonly concealed. It is further challenging to believe that a citizen would store a legitimate substance in this manner and location. See State v. Guillory, 09-1350, p. 6 (La.11/20/09), 21 So.3d 945, 949 (where the Louisiana Supreme Court upheld the seizure of plastic bag containing crack cocaine in the defendant’s waistband, noting it was difficult to imagine a legitimate substance being kept within plastic wrapping in the waistband of a citizen).
*530 Similar to the case at bar is State v. Jackson, 96-1503, p. 4 (La.App. 4 Cir. 12/4/96), 684 So.2d 1046, 1049. In Jackson the officer specifically articulated at In trial that the defendant’s nervousness during the search, as well as the size, shape, and texture of the object, caused him to believe that it was contraband. Consequently, this Court upheld the constitutionality of the seizure of cocaine from the defendant’s pocket finding that the officer “plainly felt what he believed to be contraband.” Id., p. 5, 684 So.2d at 1049. See also, State v. Stevens, 95-501 (La.App. 5 Cir. 3/26/96), 672 So.2d 986 (where the seizure of drugs in a matchbox detected during a lawful pat-down was upheld after the officer testified that her prior experience indicated that most street-level crack dealers carried their drugs in a matchbox.)
In light of the jurisprudence and the circumstances in this case, we find that the Officer Aranda had probable cause to seize the heroin, under the plain feel exception, once he felt, in his experience and observations, what he recognized to be contraband under the defendant’s shorts.
Finally, defendant argues that the officer was not authorized to conduct a search incident to arrest, because the express terms of La. R.S. 32:295.1(F) the officer specifically prohibit a search following arrest for operating a motor vehicle without wearing a seatbelt. As defendant states, La. R.S. 32:295.1(F) provides in pertinent part that “[a] law enforcement officer may not search or inspect a motor vehicle, its contents, the driver, or a passenger solely because of a violation of this Section.”
Nevertheless, the testimony failed to establish that the defendant was under arrest as a result of the seatbelt infraction or that he was searched “incident to arrest” as a result thereof. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Rather, Officer Aran-da explained that while patting the defendant down as a protective measure, he discovered the contraband. See State v. Sims, 02-2208 (La.6/27/03), 851 So.2d 1039 (discussing a police officer’s decision to conduct a limited pat down for weapons).
We find no error in the trial court’s factual findings and legal conclusions; therefore, we cannot say that the trial court abused its discretion in the denying the defendant’s motion to suppress the evidence.
CONCLUSION
Accordingly, the defendant’s conviction and sentence are affirmed.
AFFIRMED.
JENKINS, J., Concurs in the Result.

. This Court and the Supreme Court denied the defendant’s application for supervisory *525 writs. This Court found there was no abuse of discretion in the trial court’s denial of the motion to suppress the evidence.

. Patrell Williams, defendant’s fiancé, testified that she had left over $2,000, received from Whitney Bank after cashing a BP Oil claim check, in the glove box of the vehicle; and, the defendant took the vehicle before she could remove the money.

. This assignment of error was asserted by both counsel and the pro se defendant. The other two assignments were asserted by the pro se defendant only.

. Although these exhibits are unavailable in the appellate record, they are not material to a complete appellate review, as the issue is ultimately one of credibility. See State v. Lee, infra. See also State v. Leger, 05-011 (La.7/10/06), 936 So.2d 108 (unpublished appendix ), only material or prejudicial omissions from the appellate record warrant reversal.

. There is nothing in the record to indicate that the defendant was cited for illegal tint. Additionally, such an infraction would provide an alternative basis for a traffic stop. State v. Wyatt, 99-2221, p. 2 (La.App. 4 Cir. 9/27/00), 775 So.2d 481, 482-83.